IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAAGES AUDITORIUM, et al.            :

                                                 :

    v.                               :   Civil Action No. DKC 13-1722

                                                 :

PRINCE GEORGE'S COUNTY, MARYLAND
                                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case raising a constitutional challenge to zoning ordinances is a motion for summary judgment filed by Defendant Prince George's County, Maryland (the "County"). (ECF No. 61).[1] The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the County's motion for summary judgment will be granted.

## I.  Background

A complete recitation of the factual background can be found in a prior memorandum opinion issued on March 5, 2014. (ECF No. 36, at 1-6). An understanding of the facts is presumed, and only facts relevant to this opinion will be discussed here. At issue in this case are two County laws: CB-

---

[1] Plaintiffs also filed an emergency motion to stay closure of establishment. (ECF No. 60). As discussed during a teleconference the undersigned held with the parties on June 5, 2015, this motion is unrelated to the current action. Moreover, the entry of judgment for the County renders this motion moot.

46-2010 ("CB-46") and CB-56-2011 ("CB-56") (collectively, the "zoning ordinances"), which were enacted on September 7, 2010 and November 15, 2011, respectively.  In relevant part, CB-46 banned adult entertainment businesses from being located anywhere in the County other than on land zoned I-2, an industrial zone.  In addition, adult entertainment businesses must be located at least 1,000 feet from any school, residential zone, or other adult entertainment business.  CB-46 required that adult entertainment businesses conform to its requirements by May 1, 2013.  CB-56 removed the May 1 deadline, instead permitting adult entertainment businesses existing and operating with a valid use and occupancy permit in certain commercial and industrial zones to continue to operate as nonconforming provided they obtain a Special Exception.  Applications for a Special Exception were due by June 1, 2012.

Plaintiffs Maages Auditorium, CD15CL2001, Inc., and D2 (collectively, the "Plaintiffs"), operators of adult entertainment businesses in the County, filed a complaint on June 14, 2013.  (ECF No. 6).  Following a hearing, the court denied Plaintiffs' motion for a preliminary injunction and entered judgment for the County on six counts of the complaint, leaving only the following two issues unresolved: whether the zoning ordinances leave open adequate alternative avenues of communication to satisfy the First Amendment to the United

2

States Constitution; and whether the zoning ordinances satisfy Maryland's amortization doctrine. (*See* ECF Nos. 36; 37). On June 11, 2015, the County filed the pending motion for summary judgment. (ECF No. 61). Plaintiffs responded (ECF Nos. 67; 68), and the County replied (ECF No. 71).

## II.  Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most

3

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).   The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *See Liberty Lobby,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A.   Adequate Alternative Avenues of Communication

The prior memorandum opinion in this case summarized the ultimate test for the existence of adequate alternative avenues of communication as: "The number of sites available for adult businesses under the new zoning regime must merely be greater than or equal to the number of adult businesses in existence at the time the new zoning regime takes effect." (ECF No. 36, at

4

22 (internal quotation marks omitted) (citing *Bigg Wolf Discount Video Movie Sales, Inc. v. Montgomery Cnty, Md.*, 256 F.Supp.2d 385, 398 (D.Md. 2003))).   It is undisputed that there were, at most, fourteen adult entertainment businesses in operation within the County at the time the zoning ordinances were enacted. (*See* ECF Nos. 36, at 22-23; 61-1, at 4).   The County puts forth an affidavit and report from an expert witness averring that there are approximately sixty-two sites in the County that could accommodate adult entertainment businesses in conformance with the zoning ordinances. (ECF No. 61-3 ¶ 14). Plaintiffs do not provide expert rebuttal to the County's expert calculations.   Plaintiffs instead argue that the County's utilization of a "door-to-door" measurement to determine sites in compliance with the zoning ordinances' 1,000 foot restrictions is misplaced. (*See* ECF No. 68, at 2-7).

Plaintiffs' argument is fatally flawed for several reasons. First, Plaintiffs have already raised this argument unsuccessfully. The court thoroughly analyzed the County's door-to-door interpretation, and nothing warrants a departure from the previous analysis. (ECF No. 36, at 18-36).   As the undersigned explained, "Plaintiffs have failed to make any allegation that such an interpretation harms them in any way." (*Id.* at 26).   Instead, Plaintiffs continue to argue that the County's interpretation is prone to abuse and impermissible

"reinterpretations."   Plaintiffs argue that such a change in interpretation could theoretically harm them by modifying arbitrarily what qualifies as a permissible site.   At this time, however, Plaintiffs have not shown any inconsistency or abuse in the County's interpretation, an interpretation that indisputably favors Plaintiffs by providing additional permissible sites. "If and when a pattern of abuse or inconsistent treatment emerges, that will be the time to deal with dishonest applications of the regulations, not on a facial challenge." (*Id.* at 27 (citing *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 324-25 (2002))).

Plaintiffs' contention that the County utilized vague and indefinite measurement methods is also unpersuasive, particularly given the sheer number of conforming sites found using the County's calculations (62) compared with the number of adult entertainment businesses (14).   Much of Plaintiffs' argument speculates how the County *might* change its methodology in the future and ignores the County's fairly detailed explanation of its actual methodology and calculations.   (ECF No. 61-3, at 10-12).   In addition, the County was conservative in its calculations whenever possible.   For example, if a property did not currently have a structure, the County assumed the door of a hypothetical structure would be as close to the

6

property line as possible, thereby reducing the area available for permissible sites. (*Id.* at 11).

Moreover, and perhaps most importantly, Plaintiffs' argument ignores their own expert's calculations. Plaintiffs' expert, Mr. Mark Ferguson, calculated the number of conforming sites using the straight-line measurement between property lines that Plaintiffs have suggested is more appropriate. (*See* ECF No. 61-5, at 6). Mr. Ferguson initially determined that there are 12 possible sites that conformed to the zoning ordinances' requirements. (*Id.* at 8). This calculation, however, did not include possible sites subject to a restrictive covenant that may prohibit adult entertainment businesses. (*See id.* at 9). Such an omission runs directly counter to this court's prior ruling, which stated, "Going forward, land otherwise available but encumbered by a restrictive covenant between private parties against adult entertainment businesses will be considered 'available.'" (ECF No. 36, at 36). When all sites are properly included, Mr. Ferguson's calculations indicate that there are 15 possible sites. (ECF No. 61-5, at 12). Thus, even utilizing Plaintiffs' preferred methodology, the number of sites available (15) exceeds the number of adult entertainment businesses within the county at the time the zoning ordinances were enacted (14).[2]

---

[2] In his deposition, Mr. Ferguson includes the caveat that not all 15 sites may be physically suitable to accommodate an

Accordingly, any dispute as to the number of available sites is immaterial, and the County is entitled to summary judgment on this claim. *See Bigg Wolf*, 256 F.Supp. at 398.

**B.   Amortization**

In its prior memorandum opinion, the court summarized the Maryland amortization doctrine as follows:

> The law in Maryland is clear that if there is a valid use of property, and a subsequent change in zoning would render the use invalid, that new regime does not apply to the "nonconforming use." *See, e.g., Amereihn v. Kotras*, 194 Md. 591, 601 (1950). A "nonconforming use is a vested right and entitled to constitutional protection." *Id.* "A nonconforming use may be reduced to conformance or eliminated in two ways: by 'amortization,' that is, requiring its termination over a reasonable period of time, and by 'abandonment,' *i.e.* non-use for a specific [] time." *Trip Assocs., Inc. v. Mayor and City Council of Balt.*, 392 Md. 563, 575 (2006). "True amortization provisions almost if not universally call for a termination of non-conforming uses after the lapse of a reasonable, specified period in order that the owner may amortize his investment (the reasonableness of the period depends upon the nature of the non-conforming use, the structures thereon, and the investment therein)." *Mayor & City Council of Balt. v. Dembo, Inc.*, 123 Md.App.

---

adult entertainment business in their existing state due to parking, size of the existing building, and similar limitations. (ECF No. 61-5, at 12-14). Such a caveat is irrelevant because economic feasibility and other issues relating to the physical status of available sites are irrelevant to the constitutional question. *See Bigg Wolf*, 256 F.Supp.2d at 397 ("Plaintiff's claims regarding insufficient parking spaces and other structural deficiencies at some of the proposed sites are also clearly irrelevant.").

> 527, 538-39 (1998) (quoting *Stevens v. City
> of Salisbury*, 240 Md. 556, 570-71 (1965)
> (internal quotation marks omitted)). "So
> long as it provides for a reasonable
> relationship between the amortization and
> the nature of the nonconforming use, an
> ordinance prescribing such amortization is
> not unconstitutional." *Trip Assocs.*, 392
> Md. At 575 (citing *Gough v. Bd. of Zoning
> Appeals for Calvert Cnty.*, 21 Md.App. 697,
> 704-05 (1974)).

(ECF No. 36, at 50-51).

The County argues that the zoning ordinances provided a reasonable amortization period under Maryland law. Plaintiffs generally counter that any amortization period provided was not reasonable. Plaintiffs appear to misunderstand the County's argument, alleging the County believes that the Special Exception process "remov[es] the need for any amortization period." (ECF No. 68, at 12). In reality, the County argues that the six months "from the time CB-56 was passed on November 15, 2011, until the June 1, 2012 deadline for filing the Special Exception *constitutes an amortization period*, the combination of which with the Special Exception option and the sheer number of available alternative sites is sufficient to satisfy any constitutional concerns over vested rights." (ECF No. 61-1, at 7 (emphasis added)). Moreover, CB-46, the ordinance that initially restricted adult entertainment businesses, was enacted in September 2010, meaning that nonconforming adult entertainment businesses such as Plaintiffs' had approximately

9

21 months before they were required to apply for a Special
Exception or be in violation of the zoning ordinances.[3]   In
addition, the Court of Appeals of Maryland has considered the
time spent litigating a matter as relevant to the reasonableness
of an amortization period.   *Eutaw Enters., Inc. v. City of
Balt.*, 241 Md. 686, 697-98 (1966) ("In the present case the
reasonableness of the eighteen months' period of grace need not
be passed on a basis of decision.   Because the length of time
the litigation has dragged on, during which [the plaintiffs
remained in business, the plaintiffs] have had some five and a
half years . . . to enjoy and profit from [the nonconforming
use].").

      "An ordinance is not arbitrary and unconstitutional on its
face if it reveals a reasonable relationship between the
amortization period and the nature of the nonconforming use."
*Dembo*, 123 Md.App. at 539.   Here, nonconforming businesses had
nearly two years from the passage of CB-46 to amortize, a length
of time which courts have held as reasonable.   *Eutaw*, 241 Md. at
697 (noting that an amortization period "of eighteen months for
the elimination of [the plaintiff's] business is as long as many
which have been judicially approved as reasonable"); *see also*

---

[3] CB-46 initially provided an express amortization period
until May 1, 2013.   CB-56 removed this deadline, instead
mandating that nonconforming adult entertainment businesses
apply for a Special Exception by June 1, 2012.

*Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821 (4th Cir. 1979) (holding a six month period reasonable for an ordinance that required adult entertainment establishments to reduce in size); *Northend Cinema, Inc. v. City of Seattle*, 90 Wash.2d 709 (1978) (sustaining three-month amortization period for adult theater that permitted non-adult theater use thereafter).   CB-56 then gave nonconforming businesses another option — to apply for a Special Exception within six months.   In all, more than five years have passed since the passage of CB-46 and more than four years have passed since the enactment of CB-56, during which time Plaintiffs have been operating in nonconforming status. Such a time period is reasonable in relation to the modest amount of investment Plaintiffs have made to the premises, particularly because the zoning ordinances prohibit only adult entertainment.   (*See* ECF No. 61-1, at 11-14 (citing deposition transcripts)).      Furthermore,    Plaintiffs'   corporate representatives testified that they would be able to remove most of the investment that Plaintiffs have made, such as technology and furniture.   (*Id.*).   Accordingly, the zoning ordinances do not violate Maryland's amortization doctrine.[4]

---

[4] Because the amortization period was reasonable, it is not necessary to analyze the County's argument that Plaintiffs' were not lawfully using the property at the time the zoning ordinances were passed.

11

Plaintiffs make two additional arguments that warrant discussion, but ultimately are unpersuasive. First, Plaintiffs scrutinize the County's process and criteria for granting a Special Exception. Maryland courts have recognized that a locality's zoning and licensing powers are distinct and should be analyzed separately. *See Dembo*, 123 Md.App. at 534-37. Thus, the Special Exception process is not relevant to the amortization period of the zoning ordinances, or to the County's argument that such a period was reasonable. Second, Plaintiffs contend that Md. Code, Land Use § 22-113 prohibits the County's actions in this case. Section 22-113 states: "A person may continue, and appropriate licenses may be issued to the person for, a lawful nonconforming use existing on the effective date of the respective zoning laws in the metropolitan district." As the County notes, the use of the word "may" is permissive, and the statute plainly does not mandate that the County allow nonconforming use. *See Maryland-National Capital Park and Planning Comm'n v. Silkor Dev. Corp.*, 246 Md. 516, 522 (1967) (holding that the word "may" as used in a statute was "to be construed in the permissive sense"). Plaintiffs' arguments that the legislature intended § 22-113 to alter substantially Maryland's long-standing amortization doctrine are unpersuasive.

**IV.   Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendant Prince George's County will be granted.   The motion for a stay of closure of an establishment filed by Plaintiffs will be denied as moot.   A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
